87 U.S. 655 (____)
20 Wall. 655
LOAN ASSOCIATION
v.
TOPEKA.
Supreme Court of United States.

*658 Mr. Alfred Ennis, for the plaintiff in error; Messrs. Ross, Burns, and A.L. Williams, contra.
Mr. Justice MILLER delivered the opinion of the court.
Two grounds are taken in the opinion of the circuit judge and in the argument of counsel for defendant, on which it is insisted that the section of the statute of February 29th, 1872, on which the main reliance is placed to issue the bonds, is unconstitutional.
The first of these is, that by section five of article twelve of the constitution of that State it is declared that provision shall be made by general law for the organization of cities, towns, and villages; and their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, shall be so restricted as to prevent the abuse of such power.
The argument is that the statute in question is void because *659 it authorizes cities and towns to contract debts, and does not contain any restriction on the power so conferred. But whether the statute which confers power to contract debts should always contain some limitation or restriction, or whether a general restriction applicable to all cases should be passed, and whether in the absence of both the grant of power to contract is wholly void, are questions whose solution we prefer to remit to the State courts, as in this case we find ample reason to sustain the demurrer on the second ground on which it is argued by counsel and sustained by the Circuit Court.
That proposition is that the act authorizes the towns and other municipalities to which it applies, by issuing bonds or loaning their credit, to take the property of the citizen under the guise of taxation to pay these bonds, and use it in aid of the enterprises of others which are not of a public character, thus perverting the right of taxation, which can only be exercised for a public use, to the aid of individual interests and personal purposes of profit and gain.
The proposition as thus broadly stated is not new, nor is the question which it raises difficult of solution.
If these municipal corporations, which are in fact subdivisions of the State, and which for many reasons are vested with quasi legislative powers, have a fund or other property out of which they can pay the debts which they contract, without resort to taxation, it may be within the power of the legislature of the State to authorize them to use it in aid of projects strictly private or personal, but which would in a secondary manner contribute to the public good; or where there is property or money vested in a corporation of the kind for a particular use, as public worship or charity, the legislature may pass laws authorizing them to make contracts in reference to this property, and incur debts pavable from that source.
But such instances are few and exceptional, and the proposition is a very broad one, that debts contracted by municipal corporations must be paid, if paid at all, out of taxes which they may lawfully levy, and that all contracts creating *660 debts to be paid in future, not limited to payment from some other source, imply an obligation to pay by taxation.
It follows that in this class of cases the right to contract must be limited by the right to tax, and if in the given case no tax can lawfully be levied to pay the debt, the contract itself is void for want of authority to make it.
If this were not so, these corporations could make valid promises, which they have no means of fulfilling, and on which even the legislature that created them can confer no such power. The validity of a contract which can only be fulfilled by a resort to taxation, depends on the power to levy the tax for that purpose.[*]
It is, therefore, to be inferred that when the legislature of the State authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself, or in some general statute, a limitation upon the power of taxation which repels such an inference.
With these remarks and with the reference to the authorities which support them, we assume that unless the legislature of Kansas had the right to authorize the counties and towns in that State to levy taxes to be used in aid of manufacturing enterprises, conducted by individuals, or private corporations, for purposes of gain, the law is void, and the bonds issued under it are also void. We proceed to the inquiry whether such a power exists in the legislature of the State of Kansas.
We have already said the question is not new. The subject of the aid voted to railroads by counties and towns has been brought to the attention of the courts of almost every State in the Union. It has been thoroughly discussed and is still the subject of discussion in those courts. It is quite true that a decided preponderance of authority is to be found in favor of the proposition that the legislatures of the States, *661 unless restricted by some special provisions of their constitutions, may confer upon these municipal bodies the right to take stock in corporations created to build railroads, and to lend their credit to such corporations. Also to levy the necessary taxes on the inhabitants, and on property within their limits subject to general taxation, to enable them to pay the debts thus incurred. But very few of these courts have decided this without a division among the judges of which they were composed, while others have decided against the existence of the power altogether.[*]
In all these cases, however, the decision has turned upon the question whether the taxation by which this aid was afforded to the building of railroads was for a public purpose. Those who came to the conclusion that it was, held the laws for that purpose valid. Those who could not reach that conclusion held them void. In all the controversy this has been the turning-point of the judgments of the courts. And it is safe to say that no court has held debts created in aid of railroad companies, by counties or towns, valid on any other ground than that the purpose for which the taxes were levied was a public use, a purpose or object which it was the right and the duty of State governments to assist by money raised from the people by taxation. The argument in opposition to this power has been, that railroads built by corporations organized mainly for purposes of gain  the roads which they built being under their control, and not that of the State  were private and not public roads, and the tax assessed on the people went to swell the profits of individuals and not to the good of the State, or the benefit of the public, except in a remote and collateral way. On the other hand it was said that roads, canals, bridges, navigable streams, and all other highways had in all times been matter of public concern. That such channels of travel and of the carrying business had always been established, improved, regulated by the State, and that the railroad had *662 not lost this character because constructed by individual enterprise, aggregated into a corporation.
We are not prepared to say that the latter view of it is not the true one, especially as there are other characteristics of a public nature conferred on these corporations, such as the power to obtain right of way, their subjection to the laws which govern common carriers, and the like, which seem to justify the proposition. Of the disastrous consequences which have followed its recognition by the courts and which were predicted when it was first established there can be no doubt.
We have referred to this history of the contest over aid to railroads by taxation, to show that the strongest advocates for the validity of these laws never placed it on the ground of the unlimited power in the State legislature to tax the people, but conceded that where the purpose for which the tax was to be issued could no longer be justly claimed to have this public character, but was purely in aid of private or personal objects, the law authorizing it was beyond the legislative power, and was an unauthorized invasion of private right.[*]
It must be conceded that there are such rights in every free government beyond the control of the State. A government which recognized no such rights, which held the lives, the liberty, and the property of its citizens subject at all times to the absolute disposition and unlimited control of even the most democratic depository of power, is after all but a despotism. It is true it is a despotism of the many, of the majority, if you choose to call it so, but it is none the less a despotism. It may well be doubted if a man is to hold all that he is accustomed to call his own, all in which he has placed his happiness, and the security of which is essential to that happiness, under the unlimited dominion of others, whether it is not wiser that this power should be exercised by one man than by many.
*663 The theory of our governments, State and National, is opposed to the deposit of unlimited power anywhere. The executive, the legislative, and the judicial branches of these governments are all of limited and defined powers.
There are limitations on such power which grow out of the essential nature of all free governments. Implied reservations of individual rights, without which the social compact could not exist, and which are respected by all governments entitled to the name. No court, for instance, would hesitate to declare void a statute which enacted that A. and B. who were husband and wife to each other should be so no longer, but that A. should thereafter be the husband of C., and B. the wife of D. Or which should enact that the homestead now owned by A. should no longer be his, but should henceforth be the property of B.[*]
Of all the powers conferred upon government that of taxation is most liable to abuse. Given a purpose or object for which taxation may be lawfully used and the extent of its exercise is in its very nature unlimited. It is true that express limitation on the amount of tax to be levied or the things to be taxed may be imposed by constitution or statute, but in most instances for which taxes are levied, as the support of government, the prosecution of war, the National defence, any limitation is unsafe. The entire resources of the people should in some instances be at the disposal of the government.
The power to tax is, therefore, the strongest, the most pervading of all the powers of government, reaching directly or indirectly to all classes of the people. It was said by Chief Justice Marshall, in the case of McCulloch v. The State of Maryland,[] that the power to tax is the power to destroy. A striking instance of the truth of the proposition is seen in the fact that the existing tax of ten per cent. imposed by the United States on the circulation of all other banks than the National banks, drove out of existence every *664 State bank of circulation within a year or two after its passage. This power can as readily be employed against one class of individuals and in favor of another, so as to ruin the one class and give unlimited wealth and prosperity to the other, if there is no implied limitation of the uses for which the power may be exercised.
To lay with one hand the power of the government on the property of the citizen, and with the other to bestow it upon favored individuals to aid private enterprises and build up private fortunes, is none the less a robbery because it is done under the forms of law and is called taxation. This is not legislation. It is a decree under legislative forms.
Nor is it taxation. A "tax," says Webster's Dictionary, "is a rate or sum of money assessed on the person or property of a citizen by government for the use of the nation or state." "Taxes are burdens or charges imposed by the legislature upon persons or property to raise money for public purposes."[*]
Coulter, J., in Northern Liberties v. St. John's Church,[] says, very forcibly, "I think the common mind has everywhere taken in the understanding that taxes are a public imposition, levied by authority of the government for the purpose of carrying on the government in all its machinery and operations  that they are imposed for a public purpose."
We have established, we think, beyond cavil that there can be no lawful tax which is not laid for a public purpose. It may not be easy to draw the line in all cases so as to decide what is a public purpose in this sense and what is not.
It is undoubtedly the duty of the legislature which imposes or authorizes municipalities to impose a tax to see that it is not to be used for purposes of private interest instead of a public use, and the courts can only be justified in interposing when a violation of this principle is clear and the *665 reason for interference cogent. And in deciding whether, in the given case, the object for which the taxes are assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether State or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation.
But in the case before us, in which the towns are authorized to contribute aid by way of taxation to any class of manufacturers, there is no difficulty in holding that this is not such a public purpose as we have been considering. If it be said that a benefit results to the local public of a town by establishing manufactures, the same may be said of any other business or pursuit which employs capital or labor. The merchant, the mechanic, the innkeeper, the banker, the builder, the steamboat owner are equally promoters of the public good, and equally deserving the aid of the citizens by forced contributions. No line can be drawn in favor of the manufacturer which would not open the coffers of the public treasury to the importunities of two-thirds of the business men of the city or town.
A reference to one or two cases adjudicated by courts of the highest character will be sufficient, if any authority were needed, to sustain us in this proposition.
In the case of Allen v. The Inhabitants of Jay,[*] the town meeting had voted to loan their credit to the amount of $10,000, to Hutchins and Lane, if they would invest $12,000 in a steam saw-mill, grist-mill, and box-factory machinery, to be built in that town by them. There was a provision to secure the town by mortgage on the mill, and the selectmen *666 were authorized to issue town bonds for the amount of the aid so voted. Ten of the taxable inhabitants of the town filed a bill to enjoin the selectmen from issuing the bonds.
The Supreme Judicial Court of Maine, in an able opinion by Chief Justice Appleton, held that this was not a public purpose, and that the town could levy no taxes on the inhabitants in aid of the enterprise, and could, therefore, issue no bonds, though a special act of the legislature had ratified the vote of the town, and they granted the injunction as prayed for.
Shortly after the disastrous fire in Boston, in 1872, which laid an important part of that city in ashes, the governor of the State convened the legislative body of Massachusetts, called the General Court, for the express purpose of affording some relief to the city and its people from the sufferings consequent on this great calamity. A statute was passed, among others, which authorized the city to issue its bonds to an amount not exceeding twenty millions of dollars, which bonds were to be loaned, under proper guards for securing the city from loss, to the owners of the ground whose buildings had been destroyed by fire, to aid them in rebuilding.
In the case of Lowell v. The City of Boston, in the Supreme Judicial Court of Massachusetts, the validity of this act was considered. We have been furnished a copy of the opinion, though it is not yet reported in the regular series of that court. The American Law Review for July, 1873, says that the question was elaborately and ably argued. The court, in an able and exhaustive opinion, decided that the law was unconstitutional, as giving a right to tax for other than a public purpose.
The same court had previously decided, in the case of Jenkins v. Anderson,[*] that a statute authorizing the town authorities to aid by taxation a school established by the will of a citizen, and governed by trustees selected by the will, *667 was void because the school was not under the control of the town officers, and was not, therefore, a public purpose for which taxes could be levied on the inhabitants.
The same principle precisely was decided by the State court of Wisconsin in the case of Curtis v. Whipple.[*] In that case a special statute which authorized the town to aid the Jefferson Liberal Institute was declared void because, though a school of learning, it was a private enterprise not under the control of the town authorities. In the subsequent case of Whiling v. Fond du Lac, already cited, the principle is fully considered and reaffirmed.
These cases are clearly in point, and they assert a principle which meets our cordial approval.
We do not attach any importance to the fact that the town authorities paid one instalment of interest on these bonds. Such a payment works no estoppel. If the legislature was without power to authorize the issue of these bonds, and its statute attempting to confer such authority is void, the mere payment of interest, which was equally unauthorized, cannot create of itself a power to levy taxes, resting on no other foundation than the fact that they have once been illegally levied for that purpose.
The act of March 2d, 1872, concerning internal improvements, can give no assistance to these bonds. If we could hold that the corporation for manufacturing wronght-iron bridges was within the meaning of the statute, which seems very difficult to do, it would still be liable to the objection that money raised to assist the company was not for a public purpose, as we have already demonstrated.
JUDGMENT AFFIRMED.
Mr. Justice CLIFFORD, dissenting:
Unable to concur either in the opinion or judgment in this case, I will proceed to state, in very brief terms, the reasons which compel me to withhold my concurrence.
*668 Corporations of a municipal character are created by the legislature, and the legislature, as the trustee or guardian of the public interest, has the exclusive and unrestrained control over such a franchise, and may enlarge, diminish, alter, change, or abolish the same at pleasure. Where the grantees of a franchise, as well as the grantors, are public bodies and the franchise is created solely for municipal objects, the grant is at all times within the control of the legislature, and consequently the charter is subject to amendment or repeal at the will of the granting power.[*]
Errors of indiscretion which the legislature may commit in the exercise of the power it possesses cannot be corrected by the courts, for the reason that the courts cannot adjudge an act of the legislature void unless it is in violation of the Federal or State constitution.[]
State constitutions may undoubtedly restrict the power of the legislature to pass laws, and it is plain that any law passed in violation of such a prohibition is void, but the better opinion is that where the constitution of the State contains no prohibition upon the subject, express or implied, neither the State nor Federal courts can declare a statute of the State void as unwise, unjust, or inexpedient, nor for any other cause, unless it be repugnant to the Federal Constitution. Except where the Constitution has imposed limits upon the legislative power the rule of law appears to be that the power of legislation must be considered as practically absolute, whether the law operates according to natural justice or not in any particular case, for the reason that courts are not the guardians of the rights of the people of the State, save where those rights are secured by some constitutional provision which comes within judicial cognizance; or, in the language of Marshall, C.J., "The interest, wisdom, and justice of the representative body furnish the only security *669 in a large class of cases not regulated by any constitutional provision."[*]
Courts cannot nullify an act of the State legislature on the vague ground that they think it opposed to a general latent spirit supposed to pervade or underlie the constitution, where neither the terms nor the implications of the instrument disclose any such restriction.[] Such a power is denied to the courts, because to concede it would be to make the courts sovereign over both the constitution and the people, and convert the government into a judicial despotism.[]
Subject to the Federal Constitution the legislature of the State possesses the whole legislative power of the people, except so far as the power is limited by the State constitution.[§]
Our own decisions are to the same effect, as appears by one of very recent date, in which the court say that "the legislative power of a State extends to everything within the sphere of such power, except as it is restricted by the Federal Constitution or that of the State."[]
Apply those principles to the cases before the court and it follows, as it seems to me, that the judgment in each case should be reversed for the following reasons: (1.) Because the demurrer to the declaration in each case should have been overruled. (2.) Because the bonds to which the coupons sued on were attached were issued in pursuance of the express authority of the legislature vesting that power in the corporation defendants. (3.) Because the constitution of the State does not in any manner prohibit the passage of such a law as that under which the bonds were issued. (4.) Because it is not competent for a Federal court to adjudge a State statute void which does not conflict in any respect with the Constitution of the United States or that of the State whose legislature enacted the statute.
*670 Unwise laws and such as are highly inexpedient and unjust are frequently passed by legislative bodies, but there is no power vested in a Circuit Court nor in this court, to determine that any law passed by a State legislature is void if it is not repugnant to their own constitution nor the Constitution of the United States.
Vague apprehensions seem to be entertained that unless such a power is claimed and exercised inequitable consequences may result from unnecessary taxation, but in my judgment there is much more to be dreaded from judicial decisions which may have the effect to sanction the fraudulent repudiation of honest debts, than from any statutes passed by the State to enable municipal corporations to meet and discharge their just pecuniary obligations.
NOTES
[*] Sharpless v. Mayor of Philadelphia, 21 Pennsylvania State, 147, 167; Hanson v. Vernon, 27 Iowa, 28; Allen v. Inhabitants of Jay, 60 Maine, 127; Lowell v. Boston, Massachusetts (MS.); Whiting v. Fond du Lac, 25 Wisconsin, 188.
[*] The State v. Wapello Co., 9 Iowa, 308; Hanson v. Vernon, 27 Id. 28; Sharpless v. Mayor, &c., 21 Pennsylvania State, 147; Whiting v. Fond du Lac, 25 Wisconsin, 188.
[*] Olcott v. Supervisors, 16 Wallace, 689; People v. Salem, 20 Michigan, 452; Jenkins v. Andover, 103 Massachusetts, 94; Dillon on Municipal Corporations, § 587; 2 Redfield's Laws of Railways, 398, rule 2.
[*] Whiting v. Fond du Lac, 25 Wisconsin, 188; Cooley on Constitutional Limitations, 129, 175, 487; Dillon on Municipal Corporations, § 587.
[] 4 Wheaton 431.
[*] Cooley on Constitutional Limitations, 479.
[] 13 Pennsylvania State, 104; see also Pray v. Northern Liberties, 31 Id. 69; Matter of Mayor of New York, 11 Johnson, 77; Camden v. Allen, 2 Dutcher, 398; Sharpless v. Mayor of Philadelphia, supra; Hanson v. Vernon, 27 Iowa, 47; Whiting v. Fond du Lac, 25 Wisconsin, 188.
[*] 60 Maine, 124.
[*] 103 Massachusetts, 74.
[*] 24 Wisconsin, 350.
[*] Hartford v. Bridge Co., 10 Howard, 534; Bissell v. Jeffersonville, 24 Id. 294; Darlington v. Mayor, 31 New York, 187; Granby v. Thurston, 23 Connecticut, 416; 2 Kent (12th ed.), 275.
[] Benson v. Mayor, 24 Barbour, 248; Clarke v. Rochester, Ib. 446; Bank v. Rome, 18 New York, 38.
[*] Bank v. Billings, 4 Peters, 563; Cooley on Constitutional Limitations (2d ed.), 168; Calder v. Bull, 3 Dallas, 398.
[] Walker v. Cincinnati, 21 Ohio State, 41.
[] Golden v. Prince, 3 Washington's Circuit Court, 313.
[§] Bank v. Brown, 26 New York, 467; People v. Draper, 15 Id. 532.
[] Pine Grove v. Talcott, 19 Wallace, 676.